# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AUTUMN MONTES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 17-CV-565-JED-JFJ |
| v. | ) |
| | ) |
| SHERIFF MIKE REED, in his official | ) |
| Capacity as Mayes County Sheriff, | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

**I.     Background**

Plaintiff is the daughter of, and personal representative of the Estate of, James L. Wilson. In her Complaint, she alleges that, on August 5, 2016 at approximately 5:00 p.m., her father, James Wilson, was booked into the Mayes County Jail on an outstanding warrant. (Doc. 2 at ¶ 15). He was being held as a pretrial detainee. According to the Complaint, Mr. Wilson was placed in a pod, alone, and he there "sustained serious and ultimately fatal injuries including traumatic hemothorax, fractured left 4th, 5th, 6th, 7th, and 8th ribs, superior endplate compression-type fracture involving the L1 vertebral body and acute burst-type compression deformity involving the L2 vertebral body, fracture / loss of vertebral body height at C7, fracture to left scapula with medial displacement of the distal fracture . . . [and other injuries, including] severe concussion, and memory loss." (*Id.* at ¶ 16). He was transported to the emergency room within hours after being booked into the jail. (*Id.* at ¶ 17).

Plaintiff asserts that Mayes County Jail detention officers claimed that Mr. Wilson's injuries were the result of "roll[ing] off the top bunk" in his cell, but medical professionals who treated Mr. Wilson determined that such an explanation was impossible and that such injuries must

have been maliciously inflicted on him. (*Id.*). A nurse reported to the plaintiff that, when Mr. Wilson was brought into the emergency room, he had a large bruise on his back in the shape of a boot print. (*See id.* at ¶ 18). "Severe bruising and deep lacerations were also visible" on Mr. Wilson's wrists, "likely resulting from the use of handcuffs when his injuries were inflicted." (*Id.*).

After Mr. Wilson was transferred to another hospital, plaintiff was informed that Wilson had been beaten badly. He was in critical condition and required a tracheotomy, and he was put on a respirator and a feeding tube. (*Id.* at ¶ 19). After he regained consciousness, Mr. Wilson was "unable to recognize family members or recall what happened to him." (*Id.*). He had previously been jailed at the Mayes County Jail, and he informed family members that he was afraid to return to the jail "due to incidents from a previous incarceration when detention officers were very hostile towards him and extremely vocal about their distaste for his alleged crime. [He] said he feared the detention officers would kill him when they had the opportunity." (*Id.* at ¶ 20). Mr. Wilson was hospitalized for most of the time until February 9, 2017, when he "finally succumbed to his injuries." (*Id.* at ¶ 21).

Plaintiff asserts claims under 42 U.S.C. § 1983 against the Sheriff, in his official capacity, for allegedly cruel and unusual punishment and excessive force. In addition, plaintiff alleges claims for wrongful death, negligence, intentional infliction of emotional distress, and assault and battery. Sheriff Reed moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), on several grounds. (*See* Doc. 10). Plaintiff opposes the dismissal motion and indicates that she should be permitted to amend to cure any deficiencies. (*See* Doc. 12 at 4, 6, 8, 11).

## II. Dismissal Standards

In considering a Rule 12(b)(6) dismissal motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The

2

Federal Rules of Civil Procedure require "a short and plain statement of the claim to show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555-56, 570 (citations omitted).

"Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. at 556. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 562. In making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the claimant. *See Twombly*, 550 U.S. at 555.

### III. Discussion

#### A. Section 1983 Claims

##### 1. Official Capacity

Plaintiff's suit is against Sheriff Mike Reed, in his official capacity. A § 1983 claim against a government actor in his official capacity "is essentially another way of pleading an action against the county or municipality" he represents, and is considered under the standards applicable to § 1983 claims against municipalities or counties. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir.

2010); *see Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999) ("[Plaintiff]'s suit against Sheriff LeMaster in his official capacity as sheriff is the equivalent of a suit against Jackson County, [Oklahoma]."). The Court will accordingly consider the official capacity claim against Sheriff Reed under the same standards applicable to municipal entities.

A municipality may not be held liable under § 1983 solely because its employee inflicted injury; municipal liability cannot be found by application of the theory of respondeat superior. *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "[L]ocal governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). To hold a county liable under § 1983, a plaintiff must demonstrate (1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation (i.e. "whether there is a direct causal link between [the] policy or custom and the alleged constitutional deprivation"). *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 694 (citations omitted). The requirement of a policy or custom distinguishes the "acts of the municipality from acts of employees of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479.

The defendant argues that the plaintiff has not sufficiently alleged facts supporting a policy or custom that was the motivating force behind a constitutional deprivation. The only allegations in the Complaint that may relate to a policy or custom are the following:

> Defendant Sheriff Reed, in his official capacity as Mayes County Sheriff, failed to adequately train and/or supervise his employees, which gave them the time, ability,

4

and opportunity to beat [Mr. Wilson] to death without fear of punishment or adverse consequences from their supervisors. As Mayes County deputies have a long history of excessively using force against citizens under the cloak of law and their training, the Mayes County Sheriff's Office and their staff falsified reports and their personal accounts about how [Mr. Wilson] sustained his fatal injuries. This was done as part of a cover up to prevent the Mayes County Sheriff's Office and its staff from culpability and the public exposure of the County brutally killing an inmate.

(Doc. 2 at ¶¶ 28, 38).

Other than the conclusory assertion of failure to adequately train and/or supervise, the plaintiff does not indicate any specific Mayes County policy, custom, or procedure that was the motivating force behind the alleged constitutional deprivation. Plaintiff has also not alleged any facts indicating any direct causal link between any policy or obvious absence of training and a constitutional deprivation. The Supreme Court has reiterated that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. With respect to a failure to train or supervise, a municipality may only be liable where "the need for more or different training is so obvious, and the inadequacy [in training] so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390.

The Supreme Court has recognized "limited circumstances in which an allegation of a 'failure to train' can be the basis for [§ 1983 municipal] liability." *Canton*, 489 U.S. at 387. The "touchstones of this inquiry, therefore, are the risk inadequate training poses and the [municipality's] awareness of that risk." *Brown*, 227 F.3d at 1288-89. In *Connick*, the Supreme Court further elaborated on the deliberate indifference required to impose municipal liability under § 1983 for a failure to train:

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens'

5

> constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities. . . ."
>
> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference'- necessary to trigger municipal liability." Without notice in a particular respect, decision-makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

563 U.S. at 61-62 (internal citations and quotations omitted). The Supreme Court also noted that it had not foreclosed "the possibility that the unconstitutional consequences of failing to train could be so patently obvious that a [municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations," but reiterated that such liability is only available in a "rare" case involving a "narrow range of circumstances." *Id.* at 64 (quoting *Bryan County*, 520 U.S. at 409); *see also id.* at 72 (Scalia, J., concurring) (characterizing such claims as "rare").

While plaintiff alleges that "Mayes County deputies have a long history of excessively using force against citizens under the cloak of the law and their training," plaintiff has not alleged any awareness of the County of a pre-existing pattern of such abuses by detention officials *at the jail*. Plaintiff has also not identified similar circumstances of alleged targeted beating of jail inmates by detention officials. The plaintiff's § 1983 claims against Sheriff Reed in his official capacity are dismissed, without prejudice, in order to permit plaintiff to attempt to cure the deficiencies of her pleading to state a plausible official capacity / *Monell* claim.

### 2. Basis for Claim of Constitutional Violation

The defendant also argues that the plaintiff has not stated plausible claims for constitutional violations. Because the § 1983 claims against Sheriff Reed are being dismissed without prejudice,

6

with an opportunity to re-plead them, the Court will briefly address the defendant's arguments regarding the constitutional theories for the alleged underlying constitutional violations asserted in the Complaint.

The plaintiff has asserted a claim under the Eighth Amendment for cruel and unusual punishment and under the Fourteenth Amendment for excessive force. The defendant argues that both of those claims "present only a single legal claim." (Doc. 10 at 10). The defendant suggests that the "single legal claim" must be asserted under the Fourth Amendment. (Doc. 13 at 1). Although the Eighth Amendment applies to convicted persons and not directly to pretrial detainees, the Due Process Clause of the Fourteenth Amendment mandates that pretrial detainees not be subjected to *any* punishment. *See Ingram v. Wright*, 430 U.S. 651, 671, n.40 (1977); *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979); *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013). In addition, the case upon which the defendant's argument relies – *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466 (2015) – does not foreclose a Fourteenth Amendment Due Process claim on behalf of a pretrial detainee for excessive force and/or cruel and unusual punishment. *See id.* at 2472-76.

Plaintiff has alleged facts that plausibly support accusations of cruel and unusual punishment and excessive force, recognized under the Fourteenth Amendment Due Process Clause. With respect to alleged cruel and unusual punishment, plaintiff's Complaint includes factual allegations that Mr. Wilson was savagely beaten by detention officers who had been "very hostile" and "extremely vocal" with Mr. Wilson because of their "distaste for his alleged crime," supporting an allegation that officers intended to punish him, despite his pretrial detainee status. (Doc. 2 at ¶ 20). There is also no question but that the brutality alleged in the Complaint – which included numerous broken bones, a boot print to the back, and injuries to his head and torso –

would state a claim for excessive force. While the plaintiff may not assert a claim under the Eighth Amendment, she may assert a claim under the Fourteenth Amendment. However, because plaintiff has not asserted facts sufficient to state her claim against the county under *Monell*, her claims must be dismissed without prejudice. If plaintiff decides to file an amended complaint, she may also re-plead and amend the constitutional grounds for her claims.

B. **State Law Claims**

The defendant moves to dismiss the plaintiff's tort claims under the provisions of the Oklahoma Governmental Tort Claims Act (OGTCA). First, the defendant notes that the Board of County Commissioners of Mayes County would be the proper party defendant to a claim under the OGTCA, and Sheriff Reed is not the proper party on those claims. The OGTCA does not permit the naming of an individual and requires that the action "shall name the state or political subdivision against which liability is sought be established." *Okla. Stat.* tit. 51, §§ 153(C), 163(C). Under Oklahoma law, the proper entity in such a suit is the Board of County Commissioners. *See Okla. Stat.* tit. 19, § 4.

The defendant further contends that any amendment to substitute or add the Board of County Commissioners of Mayes County for purposes of plaintiff's tort claims would be futile, because the County is immune from liability for any tort claims under the correctional facility exemption, *Okla. Stat.* tit. 51, § 155(25). That statute provides that "[t]he state or a political subdivision shall not be liable if a loss or claim results from provision, equipping, operation or maintenance of any prison, jail or correctional facility." *Id.* The defendant argues that plaintiff's tort claims all arise from the County's operation of the jail. The "provision, equipping, operation or maintenance" exemption has been very broadly applied in Oklahoma cases. *See, e.g., Medina v. State*, 871 P.2d 1379, 1384, n.13 (Okla. 1993); *McClain v. Sheriff of Mayes County*, 595 F.

App'x 748, 754 (10th Cir. 2014); *Chrisman v. Board of Cty. Comm'rs of Okla. Cty.*, No. CIV-17-1309-D, 2018 WL 4291761, *9 (W.D. Okla. Sept. 7, 2018); *Sanders v. Creek Cty. Bd. Of Cty. Comm'rs*, No. 17-CV-492-JHP-FHM, 2018 WL 3580770, *4-5 (N.D. Okla. Jul. 25, 2018). Accordingly, the plaintiff's state law tort claims are dismissed with prejudice, as the County is immune as to those claims.[1]

In response, the plaintiff argues that she may assert a claim under *Bosh v. Cherokee Cty. Building Auth.*, 305 P.3d 994 (Okla. 2013). The Oklahoma Supreme Court in *Bosh* recognized that pretrial detainees have a private right of action under the Oklahoma Constitution, Article II, § 30, for excessive force, notwithstanding immunity under the OGTCA. *Bosh*, 305 P.3d at 1001. The plaintiff has not asserted a claim under the Oklahoma Constitution. She will be permitted leave to amend to attempt to assert such a claim.

### IV. Conclusion

The defendant's motion to dismiss (Doc. 10) is **granted in part**. Plaintiff's state law tort claims are dismissed with prejudice. All other claims are dismissed without prejudice, and plaintiff may file an amended complaint as described above. Any amendment shall be filed within **14 days** of the filing of this Order.

SO ORDERED this 27th day of September, 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[1] Plaintiff's intentional infliction of emotional distress claim is subject to dismissal for the additional reason that such a claim necessarily excludes good faith conduct, and an employee committing that tort could not be considered to have been acting within the scope of employment for purposes of the OGTCA. *See, e.g., McMullen v. City of Del City*, 920 P.2d 528, 531 (Okla. Civ. App. 1996); *Shaw v. City of Okla. City*, 380 P.3d 894, 897 (Okla. Civ. App. 2016).